Ronald **GLAZER,** on his own behalf and on behalf of a class of other persons similarly situated, Plaintiff,

v.

**NATIONAL COMMODITY RESEARCH AND STATISTICAL SERVICES, INC., et al., Defendants.**

Ronald **GLAZER,** on his own behalf and on behalf of a class of other persons similarly situated, Plaintiff,

v.

**NATIONAL COMMODITY RESEARCH AND STATISTICAL SERVICE, INC., et al., Defendants.**

No. 74 C 313.

United States District Court, N. D. Illinois, E. D.

Sept. 5, 1974.

Philip S. Wolin, Jeffrey Schulman, Chicago, Ill., for plaintiff.

George W. Hamman and Robert Snyder, Mayer, Brown & Platt, Chicago, Ill., for Continental Nat. Bank & Trust.

Daniel D. Mangiamele, Chicago, Ill., for Edward Weitman.

Joel J. Bellows, Chicago, Ill., for Nat. Commodity Research.

David F. Silverzweig, Chicago, Ill., for Jack Savage.

Eugene T. Sherman, Chicago Ill., for Mid America Commodity Ex.

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff has filed a class action alleging certain violations of the Securities Act of 1933, 15 U.S.C. § 77a et seq.; the Securities Exchange Act of 1934, 15 U. S.C. § 78a et seq.; and the Illinois Securities Act of 1953, Ill.Rev.Stat. ch. 121½, § 137.1 et seq. Defendants, National Commodity Research & Statistical Serv-

ice, Inc., Jack Savage and Edward Weitman have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), F.R.Civ.P. Defendants have also moved for entry of an order that the suit cannot be maintained as a class action. Rule 23(c), F.R.Civ.P.

There are four counts to the complaint, all based on the same alleged transactions, and each purporting to state a separate claim. For purposes of these motions, those allegations must be taken as true. Plaintiff claims that he invested $14,000.00 with the defendants for the purchase of options to buy or sell commodities futures contracts. Plaintiff asserts that plaintiff class consists of other persons who similarly delivered funds to defendants. Plaintiff alleges that defendants designated one of themselves to act as trading agent for commodity futures options, but did not in fact trade with third parties on the open market; instead, defendants fabricated trades resulting in fictitious profits and losses on plaintiffs' accounts. Any real trades on behalf of any plaintiffs were made by defendants either with themselves or with other investor members of plaintiff class.

Plaintiff further alleges that in the course of soliciting funds from plaintiffs, defendants made various misrepresentations as to, *inter alia,* the profitability of the investment, the competence and actual opportunity of defendants to trade in commodity options with third parties on the commodity exchange, and the special and exclusive knowledge of defendants as to trading in coffee futures.

Count I seeks injunctive and pecuniary relief for violation of § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F. R. § 240.10b–5 (1974). Count II seeks damages for violations of the registration and anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77*l*, 77*o*. and 77q. Count III seeks injunctive and pecuniary relief under the Illinois Securities Act of 1953, Ill.Rev. Stat. ch. 121½ § 137.5, under a claim of pendent jurisdiction. Count IV seeks compensation for breach of contract under a claim of pendent jurisdiction.

In support of their motion to dismiss, defendants maintain: (1) that options to buy or sell commodities futures contracts are not "securities" within the meaning of the federal securities acts; (2) that even if those acts are generally applicable to the alleged transactions, the relief sought in Count I under Section 10(b) and Rule 10b–5 cannot be granted as a matter of law because plaintiff did not specify any manipulative or deceptive devices or contrivances actionable under that section; and (3) that this is not a proper class action since the existence of common questions of law and fact is precluded by the nature of the alleged misrepresentations. Both plaintiff and defendants agree, however, that if this court finds that commodities futures options are not securities, all other issues become moot.

Plaintiff asserts that options to buy or sell commodities futures constitute "investment contracts" and therefore qualify as "securities" under both the Securities Act of 1933 and the Securities Exchange Act of 1934.[1] Plaintiff argues that all the requisite elements of an investment contract, as defined by the Supreme Court in S. E. C. v. W. J.

---

[1]. Because the definitions of "security" in those Acts are "virtually identical", Tcherepnin v. Knight, 389 U.S. 332, 335–36, 88 S. Ct. 548, 19 L.Ed.2d 564 (1967), Stuckey v. duPont Glore Forgan, Inc., 59 F.R.D. 129, 130 (N.D.Cal.1973), Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066, 1070 (M.D.Pa.1972), aff'd, 491 F.2d 752 (3d Cir. 1973), cert. denied, 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773 (1974); *see* 15 U.S.C. § 77b(1) and 15 U.S.C. § 78c(a)(10); any determination that the arrangement qualifies as a security under one statute will control the disposition of that issue with respect to the companion law. *See* Milnarik v. M–S Commodities, Inc., 320 F.Supp. 1149, 1150 n. 3 (N.D.Ill.1970), aff'd, 457 F.2d 274 (7th Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972).

Howey Co., 328 U.S. 293, 298–99, 66 S. Ct. 1100, 90 L.Ed. 1244 (1946), are present in the contract between the parties in this case.

The general rule is clear that contracts to purchase commodities futures are not investment contracts within the meaning of the federal securities laws. *See* Milnarik v. M-S Commodities, Inc., 457 F.2d 274, 275 n.1 (7th Cir.), cert. denied 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972), citing Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359, 365–67 (S.D.N.Y.1966); *see also* McCurnin v. Kohlmeyer & Co., 340 F.Supp. 1338, 1340–42 (E.D.La.1972); and Schwartz v. Bache & Co., Inc., 340 F.Supp. 995, 998–99 (S.D.Iowa 1972). The only exceptions to that rule can be found in cases where there has been a discretionary commodity trading account. *See* Gould v. Barnes Brokerage Co., Inc., 345 F.Supp. 294 (N.D.Tex.1972); Berman v. Orimex Trading, Inc., 291 F.Supp. 701 (S.D.N.Y.1968); and Maheu v. Reynolds & Co., 282 F.Supp. 423 (S.D.N.Y. 1967). However, such exceptions are not recognized in this circuit, where the rule is that even discretionary trading accounts in commodities futures are not "investment contracts" for purposes of definition as securities. Milnarik v. M-S Commodities, Inc., 457 F.2d 274 (7th Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972); Hirk v. Agri-Research Council, Inc., CCH Fed. Sec.L.Rep. ¶ 94,738, at 96,452–453 (N.D. Ill.1974); and Stevens v. Woodstock, Inc., 372 F.Supp. 654 (N.D.Ill.1974).

Arguably, this case is distinguishable since it is based on the purchase of "put" and "call" options which could constitute an investment contract even though the underlying subject matter of the options, the commodities futures contract, was not. However, the Supreme Court defined an investment contract to include an arrangement whereby a person is induced to invest his money in a common enterprise on the representation that profits will result solely from the efforts of the promoter or a third party. S. E. C. v. W. J. Howey Co., *supra*, 328 U.S. at 299, 66 S.Ct. 1100. The arrangement in this case satisfies neither the "common enterprise" requirement, nor the expectation of profits "to come from the efforts of others" criteria, and therefore does not constitute an investment contract within the context of the Securities Acts.

Plaintiff contends that there was a common enterprise among the investors as a result of defendants' failure to trade with third parties and defendants' pooling of the funds of the plaintiff class for a common purpose. The "common purpose", however, was defendants' alone; if the allegations are true, defendants' retaining and pooling of plaintiffs' funds were for the sole purpose of executing a scheme to defraud plaintiffs to obtain their money for defendants' own use. The original agreement between the parties was that defendants would not commingle plaintiff's funds, but would sell him an option to buy or sell commodities futures in trades with third parties. Defendants' breach of that contract and violation of their fiduciary obligations, as plaintiff alleges, cannot be said to have retroactively "led [plaintiff] to invest money in a common enterprise". S. E. C. v. W. J. Howey Co., *supra*, at 298, 66 S.Ct. at 1103. As the court noted in Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066, 1070 (M.D.Pa.1972), aff'd, 491 F.2d 752 (3d Cir. 1973), cert. denied, 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773 (1974):

"What plaintiffs are arguing, in effect, is that an agreement which is not an 'investment contract' can be transformed into an investment contract by the unilateral fraud of one party in violation of the original understanding. Whether an 'investment contract' exists depends, like any other contract, upon the original intention of the parties to the arrangement."

Where the named plaintiff and plaintiff class did not authorize any pooling of funds, there is no common purpose, and there can be no common enterprise. See Stevens v. Woodstock, Inc., *supra,* 372 F.Supp. at 657. Moreover, where the success or failure of other plaintiffs' contracts could have no direct impact on the profitability of any one plaintiff's contract, there can be no commonality. Milnarik v. M-S Commodities, Inc., 457 F.2d 274, 276 (7th Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972).

As to the second *Howey* requirement that the investor expect profits to come solely from the efforts of others, plaintiff has not alleged any discretionary element on the part of defendants as part of the agreement. This action arises out of defendants' alleged failure to purchase an option for commodities futures as agent for plaintiff. Plaintiff claims that defendants kept his money, along with that of other members of plaintiff class, for defendants' own use, and falsely represented to plaintiff that transactions with third parties had occurred. Plaintiff apparently learned of the fraud when, as he alleges in the complaint, he instructed defendants to liquidate his position and remit the proceeds to him, at which time they refused. Thus, as was true in Stuckey v. duPont Glore Forgan, Inc., 59 F.R.D. 129, 131 (N.D. Cal.1973):

> "The essence of the complaint . . . is not defendants' abuse of discretion, but failure to follow instructions. Since plaintiff alleges that such instructions were a part of a brokerage arrangement, there was no investment of money with profits to come 'solely from the efforts of others'. Plaintiffs themselves took an active part in the enterprise."

Finally, in considering the status of commodities futures options, this court has taken notice of the legislative history of the federal statutes. In 1936 Congress enacted the Commodity Exchange Act, 7 U.S.C. § 1 et seq., in an attempt to regulate certain specified agricultural commodities futures contracts. From time to time, the list of the regulated commodities has been expanded: nevertheless, the list does not include, *inter alia,* coffee. In this case, the named plaintiff sought to purchase options on futures of coffee, an unregulated commodity. He thus was precluded from seeking relief under the Commodity Exchange Act, and seeks to bring suit under the Federal securities acts. In an attempt to fill the obvious legislative void, the House of Representatives has passed a bill, designated "H. R. 13113" containing provision to regulate commodities futures options, which is currently pending before the Senate. Accompanying the bill is H.R.Rep. No. 975, 93d Cong., 2d Sess. 48–50 (1974), which indicates the current view that such options are not regulated by *any* federal statute.

■ Accordingly, Counts I and II are hereby dismissed for failure to state a claim upon which relief can be granted. Counts III and IV of the complaint, based on nonfederal grounds, are brought to this court via pendent jurisdiction. In discussing such claims, the Supreme Court has said, "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." U. M. W. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnotes omitted). Accordingly, Counts III and IV are hereby dismissed.